**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM BROWNING

      Petitioner,

v.                                                     Case No. 3:17-cv-905-J-32PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

**ORDER**

## I.   Status

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254, Doc. 1; Petition, with a memorandum of law in support, Doc. 1-2; Memorandum. He is challenging a state court (Duval County, Florida) judgment of conviction for aggravated battery (count one) and two counts of shooting or throwing deadly missiles (counts two and three). Doc. 1 at 1. The circuit court sentenced Petitioner to incarceration for a twenty-five-year term as to count one,[1] with a

_____

[1] The circuit court originally imposed a thirty-five-year term, but later granted Petitioner's motion to correct sentence filed during the pendency of his direct appeal and amended the judgment and sentence to reflect a twenty-five-year term. Resp. Ex. D.

twenty-five-year minimum mandatory, and a fifteen-year term for both counts two and three, with count two running concurrently to count one and count three running consecutively to count one.   Respondents have responded. <u>See</u> Doc. 19; Response.[2] Petitioner filed a reply. <u>See</u> Doc. 32; Reply. This case is ripe for review.

## II.   <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington</u>

---

[2] Attached to the Response are numerous exhibits. <u>See</u> Doc. 19-1 through Doc. 19-5. The Court cites to the exhibits as "Resp. Ex."

v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could

disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate

4

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u>

<u>v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the

state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> ""opportunity to pass upon and correct" alleged
> violations of its prisoners' federal rights."' <u>Duncan v.</u>
> <u>Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d
> 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404
> U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To
> provide the State with the necessary "opportunity," the
> prisoner must "fairly present" his claim in each
> appropriate state court (including a state supreme
> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the claim.
> <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan</u>
> <u>v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies

results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of

procedural default as follows:

> Federal habeas courts reviewing the constitutionality
> of a state prisoner's conviction and sentence are guided
> by rules designed to ensure that state-court judgments
> are accorded the finality and respect necessary to
> preserve the integrity of legal proceedings within our
> system of federalism. These rules include the doctrine

5

> of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> raising the claim and which cannot be fairly
> attributable to his own conduct." <u>McCoy v. Newsome</u>,
> 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>,
> 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice
> prong, [a petitioner] must show that "the errors at trial
> actually and substantially disadvantaged his defense
> so that he was denied fundamental fairness." <u>Id.</u> at
> 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there
> remains yet another avenue for him to receive
> consideration on the merits of his procedurally
> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence of
> a showing of cause for the procedural default." <u>Carrier</u>,
> 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is
> exceedingly narrow in scope," however, and requires
> proof of actual innocence, not just legal innocence.
> <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir.
> 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him'

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).  To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance.  <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other."  <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th

8

Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't</u>

of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   Analysis

### A. Ground One

Petitioner argues that his trial counsel was ineffective for failing to request a jury instruction for simple battery, which he contends is a necessary lesser-included offense of aggravated battery. Doc. 1 at 4. He asserts that had this instruction been included, the jury would have found him guilty of the lesser-included offense. Id. Respondents contend that this claim is unexhausted because Petitioner never raised it in state court. Doc. 19 at 18-24. According to Petitioner, he raised this claim in a successive motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850 in 2016. Doc. 32 at 17. While Petitioner acknowledges that the circuit court dismissed the claim with prejudice on procedural grounds, he contends the circuit court did so erroneously and it should have addressed the merits of this claim because he alleged a violation of his due process rights. Id. at 17-18, 20.

The record reflects that Petitioner raised a similar claim in a Rule 3.850 Motion first filed in 2014 and later amended in 2015. Resp. Ex. V at 17-18, 31-32. The circuit court found this claim was untimely and successive. Id. at 36, 38-39. Additionally, the circuit court found unavailing Petitioner's arguments that the facts underlying this claim amounted to newly discovered evidence and

10

that the alleged error constituted a manifest injustice. Id. at 36-38. Florida's bar on untimely and successive Rule 3.850 motions, where none of the enumerated exceptions are met, is a firmly established and regularly followed procedural bar in Florida. See Fla. R. Crim. P. 3.850(b)(h). However, Petitioner maintains that the circuit court incorrectly applied the procedural bar. The Court disagrees.

The Eleventh Circuit has "established a three-part test to enable us to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." Id. Second, "the state court's decision must rest solidly on state law grounds, and may not be 'intertwined with an interpretation of federal law.'" Id. (quoting Card v. Dugger, 911 F.2d 1494, 1516 (11th Cir. 1990)). Third, "the state procedural rule must be adequate, i.e., firmly established and regularly followed and not applied 'in an arbitrary or unprecedented fashion.'" Ward, 592 F.3d at 1156-57 (quoting Judd, 250 F.3d at 1313).

Petitioner filed his first Rule 3.850 Motion in 2011, Resp. Ex. M at 1-76, thus making his 2014 Rule 3.850 motion raising this claim successive. Further, regardless of its successive nature, it is also untimely. Petitioner had two years

from the date his judgment and sentence became final to file a Rule 3.850 motion. Fla. R. Crim. P. 3.850(b). The record reflects that Petitioner's judgment and sentence became final under Florida law on November 17, 2009, Resp. Ex. H, when Florida's First District Court of Appeal (First DCA) issued the Mandate following his direct appeal. See Rozzelle v. State, 29 So. 3d 1141, 1142 (Fla. 1st DCA 2009) (noting that the defendant's conviction and sentence became final when the mandate from his direct appeal was issued). Petitioner did not file his second Rule 3.850 motion until March 13, 2014, Resp. Ex. V at 1-13, more than two years from November 17, 2009. Petitioner asserts that the error alleged in this claim constitutes a manifest injustice, which can be reviewed at any time. However, this is not one of the enumerated exceptions to the two-year time limit. See Fla. R. Crim. P. 3.850(b)(1)-(3) (listing as exceptions newly discovered evidence, a newly established fundamental constitutional right, or failing on the part of postconviction counsel to timely file a Rule 3.850 motion). Accordingly, Petitioner has failed to establish that the circuit court applied these procedural bars in an arbitrary or unprecedented manner. See Ward, 592 F.3d at 1156-57. In light of the above, the claim in Ground One is unexhausted.

Nevertheless, even if Petitioner properly exhausted this claim, he would not be entitled to federal habeas relief because Petitioner relies solely on the concept of a jury pardon to demonstrate prejudice. However, a jury pardon,

cannot establish prejudice under <u>Strickland</u>. <u>See</u> <u>Strickland</u>, 466 U.S. at 694-95 (noting that in determining the existence of prejudice, a court should presume the "jury acted according to the law," and "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like."); <u>Sanders v. State</u>, 946 So. 2d 953, 959-60 (Fla. 2006) (holding that the mere possibility a jury might have exercised its pardon power "cannot form the basis for a finding of prejudice" to support an ineffective assistance of counsel claim). Petitioner's inability to establish prejudice, renders this claim meritless. For the above stated reasons, Ground One is denied.

### B. Ground Two

In Ground Two, Petitioner alleges that the State did not include a charge of aggravated battery causing great bodily harm in the Information and, therefore, he contends that he was illegally convicted of an uncharged offense. Doc. 1 at 4. Petitioner did not raise this claim before the trial court; instead, he raised it for the first time on direct appeal as a claim of fundamental error.[6] Resp. Ex. E at 20-21. The First DCA per curiam affirmed Petitioner's convictions and sentences without issuing a written opinion. Resp. Exs. G; H.

---

[6] Notably, the State did not argue on direct appeal that Petitioner failed to preserve this claim. Resp. Ex. F at 9. Likewise, Respondents do not argue that this claim is unexhausted. Doc. 19 at 25.

To the extent that the First DCA denied this claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. "The sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction." Heath v. Jones, 863 F.2d 815, 821 (11th Cir. 1989) (citing DeBenedictis v. Wainwright, 674 F.2d 841 (11th Cir.1982)). The record reflects that the State charged Petitioner with attempted second-degree murder. Resp. Ex. A at 51-52. The amended Information alleged that:

> William Browning on September 1, 2007, in the County of Duval and the State of Florida, did unlawfully and by an act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, attempt to kill Bubba Collier, a human being, by the said Bubba Collier and during the commission of the aforementioned Attempted Murder in the Second Degree the said William Browning did actually possess and discharge a firearm and as a result of the discharge, death or great bodily harm was inflicted upon any person, contrary to the provisions of Sections 782.04(2), 775.087(2)(a)3 and 777.04(1), Florida Statutes.

---

[7] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Id. In Florida, "a jury instruction cannot be given on a permissive lesser included offense unless both the accusatory pleading and the evidence support the commission of that offense." Whyte v. State, 881 So. 2d 1183, 1184 (Fla. 5th DCA 2004) (citing State v. Von Deck, 607 So.2d 1388, 1389 (Fla. 1992)). A person commits aggravated battery in Florida by committing a battery and either intentionally or knowingly causing great bodily harm or using a weapon. See § 784.045(1)(a), Fla. Stat. (2007).

Here, the State charged Petitioner in the amended Information with possessing and discharging a firearm, Resp. Ex. A at 51-52, which is the equivalent of "use" for purposes of section 784.045(1)(a)2, Florida Statutes (2007). See Davis v. State, 884 So. 2d 1058, 1059 (Fla. 2d DCA 2004) (noting that "the general statutory term 'uses a deadly weapon' encompasses the more specific language 'discharges a deadly weapon.'"). Thus, the charging document sufficiently alleged the elements of aggravated battery based on Petitioner's use of a deadly weapon. See § 784.045(1)(a)2, Fla. Stat. (2007). On this record, Petitioner has not established that the circuit court lacked jurisdiction due to deficiencies in the amended Information. See Heath, 863 F.2d at 821. As such, Petitioner has also failed to demonstrate that the state court's rejection of this claim was contrary to or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence adduced in state court. Accordingly, Ground Two is denied.

**C. Ground Three**

Petitioner avers that section 775.087, Florida Statutes (2007), and <u>Ray v. State</u>, 403 So. 2d 956 (Fla. 1981), required the circuit court to impose a lesser penalty than that which could have been imposed had he been found guilty of attempted second-degree murder, and that counsel was ineffective for not raising this issue. Doc. 1 at 5; Memorandum at 11. Petitioner contends that he raised a similar claim as ground twelve of his Rule 3.850 motion filed in 2011. Doc. 1 at 5. However, the record reflects that while Petitioner raised a somewhat similar argument in support of his claim that aggravated battery was not a lesser-included offense of attempted second-degree murder, he did not raise this issue as a standalone claim. Resp. Ex. M at 26. Respondents, though, do not dispute this claim is exhausted. Doc. 19 at 29.

"A court has the discretion to accept or reject a concession from the respondent that administrative remedies have been exhausted." <u>Santiago-Lugo v. Warden</u>, 785 F.3d 467, 475 (11th Cir. 2015). In fact, "a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." <u>Id.</u> (citing <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1987)); <u>see also</u> 28 U.S.C. § 2254(b)(2). Accordingly, because the instant claim is due to be denied, the Court bypasses the exhaustion issue and addresses the claim on the merits.

As previously explained in the Court's analysis of Ground Two, the State sufficiently alleged the elements of aggravated battery in the amended Information, such that Petitioner was not convicted of an uncharged crime. Aggravated battery is a second-degree felony punishable up to fifteen years in prison. §§ 775.082(3)(c); 784.045(2), Fla. Stat. (2007). However, pursuant to section 775.087(2)(a)3, if a defendant discharges a firearm and causes great bodily harm or death during the commission of an aggravated battery (among other enumerated felonies), then "the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison." Moreover, if this minimum mandatory term of incarceration exceeds the maximum sentences authorized by section 775.082, then the minimum mandatory sentence under section 775.087(2)(a)3 must still be imposed. § 775.087(2)(a)3(c), Fla. Stat. (2007).

The amended Information not only sufficiently alleged the offense of aggravated battery but also alleged Petitioner discharged a firearm causing great bodily harm. Resp. Ex. A at 51-52. Based on this record and the applicable law, the circuit court did not impose an illegal sentence as to count one because the twenty-five-year term of incarceration along with the twenty-five-year minimum mandatory were within the statutory sentencing range enumerated in section 775.087(2)(a)3. Petitioner's reliance on <u>Ray</u> is also misplaced because in 2006, the Florida Supreme Court held that "<u>Ray</u> does not require that the

lesser included offense be lesser both in degree and in penalty [than the charged offense]." <u>Sanders v. State</u>, 944 So. 2d 203, 207 (Fla. 2006). In fact, in <u>Sanders</u>, Florida's Second District Court of Appeal certified[8] the following question as being of great public importance: "In order for an offense to be a lesser-included offense, must it necessarily result in a lesser penalty than either the penalty for the main offense or the next greater offense on the verdict form?" <u>Id.</u> at 204. The Florida Supreme Court answered the question in the negative. <u>Id.</u> Thus, Petitioner's argument here fails as a matter of law. An attorney cannot be ineffective for failing to raise a meritless claim. <u>See</u> <u>Freeman v. Atty. Gen.</u>, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). Accordingly, Ground Three is denied.

### D. Ground Four

Petitioner contends that the sentences imposed on counts one and two violate the Constitution's prohibition against double jeopardy because each count is "based on the same underlying act[,] the possible battering of a person in one continuous act." Doc. at 5. Respondents argue that Petitioner failed to properly exhaust this claim, Doc. 19 at 33, they also argue it is otherwise

---

[8] The Florida Supreme Court has discretionary jurisdiction to "review any decision of a district court of appeal that passes upon a question certified by it to be of great public importance, or that is certified by it to be in direct conflict with a decision of another district court of appeal." art. V, § 3(b)(4), Fla. Const.

without merit, id. at 33-36. Petitioner did not address Respondents' exhaustion argument in his Reply. Doc. 32.

A review of the record reflects that Petitioner raised a similar claim in a motion to correct illegal sentence filed pursuant to Florida Rule of Criminal Procedure 3.800(a) on August 10, 2010. Resp. Ex. LL. Respondents represent that the circuit court has not ruled on the motion, Doc. 19 at 7, and a review of the state court docket reflects the same. See State v. William Browning, Case 16-2007-CF-013721-AXXX-MA. Notably, Petitioner did raise this double jeopardy claim again in a subsequent motion to correct illegal sentence. See id. (Docket Entry 369). However, he voluntarily dismissed this claim. See id. (Docket Entries 377; 378). In light of this record, the Court bypasses the exhaustion issue because this claim can be denied on the merits. See Santiago-Lugo, 785 F.3d at 475; 28 U.S.C. § 2254(b)(2).

The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for the same offense after a conviction; and (3) multiple punishments for the same offense. Jones v. Sec'y, Dep't of Corr., 778 F. App'x 626, 634 (11th Cir. 2019) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). Regarding the protection against multiple punishments, when the same conduct violates two statutory provisions, courts conduct an analysis to determine whether the legislature "intended that each violation be a separate

offense." <u>Garrett v. United States</u>, 471 U.S. 773, 778 (1985). In conducting the double jeopardy analysis referenced in <u>Garrett</u>, a court first looks to the charged offenses and the statutes codifying those charges. If a clear indication of intent to create and punish separate offenses exists from reading the plain language of the statute, "our inquiry is at an end and the double jeopardy bar does not apply." <u>Williams v. Singletary</u>, 78 F.3d 1510, 1513 (11th Cir.1996); <u>see also United States v. Stewart</u>, 65 F.3d 918, 928 (11th Cir.1995) (stating that "when the relevant statutes on their face indicate a clear legislative intent to allow multiple punishments, we need not engage in a <u>Blockburger</u>[9] analysis, because we must give effect to that legislative intent") (citing <u>Garrett</u>, 471 U.S. at 779; <u>United States v. Albernaz</u>, 450 U.S. 333, 340 (1981)). If the legislature's intent is unclear based upon the plain language of the statutes, a court should "apply the 'same elements' test established in <u>Blockburger</u>." <u>United States v. Smith</u>, 532 F.3d 1125, 1128 (11th Cir. 2008). The rule expressed in <u>Blockburger</u> "is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." <u>Blockburger</u>, 284 U.S. at 304.

---

[9] <u>Blockburger v. United States</u>, 284 U.S. 299 (1932).

The Florida statutes codifying the criminal offenses of aggravated battery, section 784.045, and shooting into a building, section 790.19, Florida Statutes (2007), do not indicate a clear legislative intent to allow multiple punishments. Accordingly, the Court will review the elements of each offense under the <u>Blockburger</u> test. Pursuant to section 784.045(1)(a), "[a] person commits aggravated battery who, in committing battery" either "intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement"; or "[u]ses a deadly weapon." The elements of a battery are that a person "actually and intentionally touches or strikes another person against the will of the other" or "[i]ntentionally causes bodily harm to another person." § 784.03(1)(a), Fla. Stat. (2007). A person commits the offense of shooting into a building when he or she "wantonly or maliciously, shoots at, within, or into, or throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in any public or private building, occupied or unoccupied." § 790.19, Fla. Stat. (2007); <u>see also</u> Fla. Std. Jury Instr. (Crim.) 10.13 (listing the following elements: (1) defendant shot a firearm that would produce death or great bodily harm; (2) defendant shot into a public or private building, occupied or unoccupied; and (3) defendant did so wantonly or maliciously). Notably, merely shooting a firearm into a building does not establish the third element. <u>See</u> <u>State v. Kettell</u>, 980 So. 2d 1061, 1062 (Fla. 2008) ("Applying the elementary principle that performing an act

'wantonly or maliciously' requires more than merely performing the act, we hold that proof of the shooting alone is insufficient to prove the crime."). Accordingly, the mere fact that Petitioner used a deadly weapon, an element of aggravated battery, would not establish that he did so wantonly or maliciously. This third element of shooting into a building requires proof which the elements of aggravated battery do not. As such, Petitioner's convictions on counts one and two do not violate the Double Jeopardy Clause, and, therefore, Ground Four is denied.[10]

### E. Ground Five

Petitioner claims that count three should have been severed and tried separately. Doc. 1 at 6. He further alleges that the State failed to submit evidence at trial that would prove he committed this offense. Id. Specifically, in his Memorandum, Petitioner contends that there was no evidence that he shot "into, at or within" the dwelling on August 20, 2007. Doc. 1-2 at 9.

According to Petitioner, he raised this claim twice, once in his original Rule 3.850 motion and again in a petition for writ of certiorari filed on February

---

[10] While the Court located Florida case law affirming convictions for both aggravated battery and shooting into a building, the Court was unable to locate any cases specifically addressing the issue of double jeopardy as to these two offenses. Nonetheless, the Court believes its interpretation of Florida law is correct. The Court further notes that the circuit court ordered the sentences imposed on counts one and two to run concurrently. Therefore, even if Petitioner was entitled to relief, the result would have no practical effect on the time he is serving.

6, 2017, in the First DCA. The record, however, reflects that Petitioner raised a somewhat similar claim in state court, but it was couched in terms of ineffective assistance of counsel. Resp. Exs. M at 28-29; FF at 20; HH; V at 5. Nonetheless, despite this record, Respondents assert Petitioner properly exhausted this claim. Doc. 19 at 37. In light of this concession, the Court bypasses the exhaustion issue because the claim can be denied on the merits. See Santiago-Lugo, 785 F.3d at 475; 28 U.S.C. § 2254(b)(2).

To add context, a brief review of the evidence produced at trial is necessary. Petitioner and his wife separated following eighteen years of marriage. Resp. Ex. B at 23-30. After she left the marital home, Petitioner began harassing her at her place of employment, a local bar in Jacksonville. Id. at 31-33. On the night of August 20, 2007, Petitioner placed a threatening phone call to his wife while she was at work. Id. at 34. Later that same night, she and patrons of the bar heard what sounded like either five firecrackers or gunshots. Id. The next day, the owner of the bar discovered bullet holes in the front door of the bar and six shell casings in the parking lot. Id. at 35-37, 105-07.

Several days later on the night of August 31, 2007, and the early morning of September 1, 2007, Petitioner called the bar multiple times in attempts to harass his wife and interfere with her work. Id. at 37-38, 143-45, 147-71. During one of those calls, Petitioner told his wife "The bogeyman's coming. Bang, bang, you're dead." Id. After this call, she stopped answering the phone and let a

customer, James Newmans, answer the phone. Id. at 38, 79-80. Newmans testified he answered the phone once that night and recognized Petitioner's voice on the other end when Petitioner repeated what he had told his wife earlier. Id. at 80. Ultimately, later that night everyone in the bar heard five gunshots, with one of those shots going through the front door of the bar and hitting a patron, Bubba Collier. Id. at 38-40, 51-53, 60-62, 81-82. The Jacksonville Sheriff's Office and an ambulance arrived at the scene to transport Collier to the hospital. Id. at 38-40, 53, 62. Collier's treating physician testified that Collier suffered one gunshot wound that entered the right shoulder and left through the chest causing rib fractures, bruising to the lung, a fractured scapula, and a collapsed lung. Resp. Ex. C at 241-42. The physician further testified that Collier would have died had he not been treated. Id. at 243-44. After speaking with detectives, Petitioner's wife went back to the marital home to retrieve some of her children's belongings, when her daughters found unused bullets inside the mailbox, which JSO later collected. Resp. Ex. B at 40-42.

The night of the second shooting, two people in the bar, Erika Morris and Newmans, exited the bar and saw who they thought was Petitioner driving away on a motorcycle. Id. at 62-66, 82-86. Both of them testified the man on the motorcycle was the only person outside at that period of time. Id. at 65, 84-85. According to Morris, after the shooting, she went to check on her dog who was in her truck in the bar's parking lot. Id. at 62-64. Although she did not see the

face of the man on the motorcycle, Morris testified that the man's stature was similar to Petitioner, the motorcycle appeared to be Petitioner's, and the driver wore a bandana with his hair pulled back in a pony tail in the same fashion Petitioner wore. Id. at 64-66,72-73, 76. Newmans testified that after the gunshots stopped, he ran out of the front door and looked outside, at which time he saw Petitioner on his motorcycle riding on the street. Id. at 82-83. Newmans observed a bald spot on the back of the motorcyclist's head and also saw the left side of the driver's face. Id. at 83. The motorcycle Newmans saw had an American flag on the back of it and was otherwise consistent with Petitioner's motorcycle, which Newmans had previously seen. Id. at 83-84. Based on these observations, Newmans testified that he had no doubt Petitioner was driving the motorcycle. Id. at 84-85.

An investigation of the scene on September 1, 2007, revealed five shell casings and four new bullet strikes to the door along with bullet strikes from the previous shooting. Resp. Ex. C at 114-20, 123. The crime scene detective found bullet strikes and two projectiles inside the bar. Id. at 120-24. The owner of the bar gave the crime scene detectives the shell casings from the August 20th incident as well. Id. at 107, 124. A crime lab analyst with the Florida Department of Law Enforcement determined that the two projectiles recovered were both .380 caliber, and although both projectiles had similarities, due to insufficient markings, he was unable to testify that both projectiles were fired

from the same gun. Id. at 221-24. However, the analyst also examined the shell casings from both the August 20th incident and August 31st incident and determined all the casings were fired from the same gun and were consistent with the ammunition recovered from Petitioner's mailbox. Id. at 225-31.

Two detectives, Detective J. L. Eason and Detective Sean Coarsey, each interviewed Petitioner on September 13, 2007, but at different times, the audio of both interviews was played at trial. Resp. Exs. B at 136-73, 183-200; C at 205-11. During the interview with Eason, Petitioner confessed he made the phone calls and shot at the bar on August 20th and 31st in hopes of getting his wife fired and scaring away business. Resp. Ex. B at 143-45, 147-71. Petitioner told Eason that he did not intend to shoot Bubba and did not realize he had shot anyone until his son-in-law informed him about it later. Id. at 145, 148, 161. When it was Coarsey's turn to interview, Petitioner again explained he shot at the bar only to scare away business and that his gun fired .380 caliber ammunition. Resp. Exs. B at 194, 198-99; C at 211. Petitioner also told Coarsey that he was sorry he made the 'bogeyman" calls and he did not think the shots would go through the bar's front door. Resp. Ex. C at 209.

Petitioner was arrested and after he posted bail, the owner of the bar, Oscar Lucas, and Petitioner had a confrontation in the bar parking lot. Resp. Ex. B at 107-09. According to Lucas, Petitioner drove up to the bar in his motorcycle. Id. at 108. Lucas told Petitioner to keep his hands on the handlebars

and to stop calling the bar and shooting at it. Id. At the end of the conversation, Petitioner acted like he was leaving, stopped his bike, turned around, and told Lucas that "the bogeyman's going to get you too." Id. at 109. Petitioner then drove off. Id.

As noted above, to prove Petitioner committed the offense of shooting into a building on August 20, 2007, the State had to prove at trial that Petitioner (1) shot a firearm that would produce death or great bodily harm; (2) he shot into a building; and (3) did so wantonly or maliciously. See § 790.19, Fla. Stat. (2007); Fla. Std. Jury Instr. (Crim.) 10.13. Regarding the third element, wantonly is defined as "consciously and intentionally, with reckless indifference to consequences and with the knowledge that damage is likely to be done to some person." Kettell, 980 So. 2d at 1067. Maliciously is defined as "wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or the property of another person." Id. In other words, the State must prove "'that damage is likely to be done to some person' (for acting "wantonly") or that injury or damage will or may be caused to another person or the property of another person (for acting "maliciously")." Kettell, 980 So. 2d at 1067 (emphasis in original) (quoting Smith v. State, 679 So.2d 30, 31 (Fla. 4th DCA 1996)).

Based on the evidence outlined above, the State provided competent and substantial evidence to convict Petitioner for shooting into a building on August

20, 2007. Petitioner admitted he shot at the bar on August 20th with live ammunition to "scare business away." Resp. Exs. B at 194; C at 211. The owner of the bar testified that there was damage to the front door of the bar in the form of bullet strikes. Resp. Ex. B at 35-36, 105-07, 119-20. Moreover, six shell casings were recovered from the August 20th shooting, id. at 106-07, 124, and a ballistics expert determined that those six shell casings and the five recovered after the August 31st shooting were fired from the same gun, Resp. Ex. C at 225-28. Accordingly, contrary to Petitioner's contentions otherwise, the State did provide proof of each essential element of shooting into a building.

Turning to the issue of whether count three should have been tried separately from counts one and two, the Court notes that "[i]mproper joinder does not, in itself, violate the Constitution"; instead, "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n.8 (1986). Under Florida law, two or more offenses are triable in the same court if the offenses are based on "2 or more connected acts or transactions." Fla. R. Crim. P. 3.150(a). Here, all three counts are connected as they involved substantially similar situations and represented a progression of Petitioner's actions. In light of the record evidence described above, Petitioner has not demonstrated how the trying of these cases together violated his right to a fair trial. Indeed, even if these counts were severed and tried separately,

the State provided sufficient evidence of Petitioner's guilt as to each offense. As such, even in separate trials there is no reasonable probability a jury would have acquitted Petitioner on any count. For the same reason, even assuming Petitioner raised this as a claim of ineffective assistance of counsel, counsel cannot be deficient for failing to raise a meritless issue. See Freeman, 536 F.3d at 1233. In light of the foregoing, Ground Five is denied.

### F. Ground Six

Petitioner argues that his counsel was ineffective for failing to move to suppress the audio recordings of his interviews with the two detectives on September 13, 2007. Doc. 1 at 6; Doc. 1-2 at 14-18. According to Petitioner, the detectives coerced him into confessing, and he was under the influence of alcohol and "possibly oxycodin [sic]." Doc. 1 at 6. Petitioner maintains that the detectives told him the interview was about aggravated stalking and criminal mischief, not the charged offenses. Doc. 1-2 at 14. Additionally, he claims that he told detectives that he did not want to be there, at which point he contends the detectives should have stopped the interview. Id. Petitioner avers that but for the introduction of these interviews, he would not have been found guilty. Id. at 17-18.

Petitioner raised a substantially similar claim in his 2011 Rule 3.850 motion. Resp. Ex. M at 10-17. Following an evidentiary hearing, the postconviction court denied this claim, explaining:

29

An evidentiary hearing was held on September 14, 2012, and Defendant testified that during the interviews, he was under the influence of alcohol, specifically Bacardi and coconut rum. Defendant also testified that he asked for an attorney after he was read his Miranda rights because he wanted to leave. The State presented Ian Weldon, Defendant's legal counsel at the time, as a witness. Mr. Weldon testified that he was provided unredacted versions of Defendant's statements during the interviews. Mr. Weldon testified that he did not see Defendant make any request for an attorney in the unredacted interviews, and that Defendant never told him that he asked for an attorney during the interviews. Mr. Weldon further testified that he did not believe that there were any grounds to support filing in good faith a motion to suppress Defendant's statements made to the police. As such, this Court finds that Defendant has not met his burden in ground five and denies ground five. See Reed v. State, 875 So. 2d 415, 432 (Fla. 2004) (finding that counsel was not ineffective for failing to challenge the admission of evidence when such challenge would have been fruitless).

Resp. Ex. M at 91-92 (record citations omitted). The First DCA per curiam affirmed the denial of relief on this claim without issuing a written opinion. Resp. Exs. R; S.

To the extent that the First DCA affirmed the postconviction court's denial on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. "A

---

[11] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

confession that was not the product of free will and rationale [sic] intellect or that was made when the individual's will was 'overborne' by physical, psychological, or drug-induced means, is inadmissible." <u>Parker v. Allen</u>, 565 F.3d 1258,1280 (11th Cir.2009) (quoting <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1963)). Suppression of a confession is warranted only where police misconduct is causally related to the confession. <u>Colorado v. Connelly</u>, 479 U.S. 157, 164 (1986). However, "[e]ven where there is causal connection between police misconduct and a defendant's confession, it does not automatically follow that there has been a violation of the Due Process Clause." <u>Id.</u> at 164 n.2 (citing <u>Frazier v. Cupp</u>, 394 U.S. 731, 739 (1969)). Instead, courts must review the totality of the circumstances to determine whether suppression is appropriate. <u>Withrow v. Williams</u>, 507 U.S. 680, 688-89 (1993) (internal quotation and citations omitted). In Florida, a defendant's intoxication during an interrogation generally affects the credibility, not the admissibility, of a confession. <u>Slade v. State</u>, 129 So. 3d 461, 464 (Fla. 2d DCA 2014). However, the mind of the accused must have been "sufficiently clear and unhampered by the combination of his physical condition and the impact of the [intoxicant] that it can be [said] that he freely and voluntarily related his connection with the crime." <u>Reddish v. State</u>, 167 So. 2d 858, 863 (Fla. 1964).

The record reflects that at the beginning of the redacted interview, Eason and Petitioner had the following discussion:

DETECTIVE EASON:  (Inaudible.) Bill, if you want to talk to a lawyer, we can end this conversation right now and you don't want to talk to me anymore, and I'll take you on to jail. But if you want to talk to me, then we'll talk about what happened.

MR. BROWNING:  I'll go to jail again. (Inaudible.)

DETECTIVE EASON:  No. Listen to me. Bill.

MR. BROWNING:  I'm going to jail.

DETECTIVE EASON:  No. Listen to me. If you want to continue to talk to me now, I'll sit here and talk to you. I'll talk to you for 24 hours. I'll talk to you for 48 hours, but if you want to talk to a lawyer, then I can't talk to you anymore by law. So it's up to you, buddy.

MR. BROWNING:  Why do I get a (inaudible)?

DETECTIVE EASON:  But listen to me. If this conversation is over, then we'll have to go to trial and I have to present my case with all the evidence that I have on you so far without ever hearing your side of the story, and I can't get [to] hear your side of the story. That's why I'm here talking with you now. But if you want to conclude it and you want to talk to a lawyer, you tell me right now, buddy.

MR. BROWNING:  I want to go home. If I admit to something, can I go home?

DETECTIVE EASON:  Bill, you want to talk to me, buddy?

MR. BROWNING:  I want to go home, okay?

DETECTIVE EASON:  Hmm? Do you want to talk to me? Yes or no. It's a yes or no question, buddy.

32

MR. BROWNING:  I want to get out.

DETECTIVE EASON:  No, I can't. Listen to me. I'll tell you what I have but you have to tell me yes or no, you want to talk to me or you want to talk to a lawyer. But I'm giving you the opportunity to talk to me.
Talk to me all day long, Bill, but if you tell me right now that you want to talk to a lawyer and you want to go through this, and -- then we'll go on. We'll go on (inaudible) --

MR. BROWNING:  What happens if I admit it?

DETECTIVE EASON:  First of all, before you say anything else, do you want to talk to me, Bill?

MR. BROWNING:  I guess.

Resp. Ex. B at 139-42. At this point, Eason then read the <u>Miranda</u> warnings to Petitioner and Petitioner signed a form acknowledging his waiver of those rights. <u>Id.</u> at 142-43. The interview then continued:

DETECTIVE EASON:  Okay. I want your side of the story now.

MR. BROWNING:  What's criminal mischief?

DETECTIVE EASON:  What's criminal mischief? Criminal mischief is if you damage property without intent to cause any other harm to a person.

MR. BROWNING:  I want to go home.

DETECTIVE EASON:   And attempted first-degree murder means that you planned to go to the bar that night and kill Peter or whoever was inside that bar without actually carrying out the actual murder and causing somebody great bodily harm.

33

Did you mean to do it?

MR. BROWNING:  No.

Id. at 143-44. Thereafter, Eason and Petitioner discussed the events of the shootings on August 20th and August 31st, with Petitioner confessing to both shootings. Id. at 144-73.

Based on this record, contrary to Petitioner's assertions, he did not confess prior to being Mirandized. Moreover, once Mirandized, Eason explained the charge of attempted first-degree murder and, thereafter, the entirety of the redacted interview dealt exclusively with the two shooting incidents. Petitioner's statements that he wanted to go home do not qualify as an unequivocal request for an attorney or to remain silent because his request merely communicated his desire to leave. While Eason's pre-Miranda line of questioning was designed to encourage Petitioner to talk, nothing in the above quoted portion of the interview demonstrates coercion.

To the extent Petitioner contends the unredacted version of the interview shows that Eason coerced him and that he confessed prior to being read his Miranda rights, the circuit court made a factual determination to the contrary. The circuit court denied relief based on trial counsel's testimony at an evidentiary hearing. At that hearing, counsel stated that he reviewed the entire unredacted interview and that Petitioner never made an unequivocal request

for an attorney during the interview. Resp. Ex. N at 250. Furthermore, when counsel and Petitioner discussed the interview prior to trial, counsel testified that Petitioner never mentioned he requested an attorney. Id. at 251-52. Absent clear and convincing evidence to the contrary, a federal court must presume a state court's factual determination is correct. 28 U.S.C. § 2254(e)(1). Petitioner has not provided clear and convincing evidence to rebut the circuit court's factual finding that counsel's testimony was credible. As such, counsel's testimony at the evidentiary hearing refutes Petitioner's claim here. See id.

Turning to the issue of whether or  not Petitioner was intoxicated to the point that his statement should have been suppressed, counsel testified at the evidentiary hearing that Petitioner told him he had consumed half a pint of gin and took some pills. Resp. Ex. N at 252-53. However, counsel also testified that upon his review of the entire interview, Petitioner did not appear to be intoxicated because Petitioner had no issues comprehending what was going on during the interview. Id. at 253-54. As such, counsel felt he did not have a good faith basis on which to file a motion to suppress. Id. The circuit court found this testimony credible in denying Petitioner's claim and Petitioner has not provided clear and convincing evidence rebutting this factual finding. Indeed, the Court has reviewed the transcript of the redacted interview played at trial and Petitioner had no difficulties understanding or answering the questions asked and gave cogent, appropriate responses to the questions asked. Accordingly, the

Court finds that even if Petitioner had consumed alcohol prior to the interview, it did not hamper his mind in any significant manner and did not affect the voluntariness of his statements. See Reddish, 167 So. 2d at 863. Based on the above analysis, counsel did not have a good faith basis to argue for suppression and, therefore, counsel is not deficient. See Freeman, 536 F.3d at 1233.

The Court further finds that counsel's decision not to move to suppress the interview was a reasonable trial strategy given the other evidence against Petitioner and the fact that Petitioner's statements allowed counsel to successfully argue that Petitioner did not have the requisite intent to commit attempted second-degree murder. As previously mentioned, witnesses and forensic evidence established that Petitioner shot at the bar twice and severely injured one of the patrons. This evidence alone would have been sufficient to convict Petitioner of the charged offenses. However, during the interview, Petitioner repeatedly stated he did not intend to actually shoot anyone, and both detectives testified at trial that they believed Petitioner when he made these comments. Resp. Exs. B at 145, 149, 152-53, 161, 180-81; C at 209, 212. Counsel later used these statements to argue for a lesser offense. Resp. Ex. C at 273-81. Absent Petitioner's statements and the detectives' testimony that they believed Petitioner was sincere, it is possible a jury could have returned a verdict of guilty for the greater offense of attempted second-degree murder. As such, counsel was not deficient for failing to move to suppress. See Knight v.

Fla. Dep't of Corr., 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Strickland, 466 U.S. at 690) ("In assessing an attorney's performance under Strickland, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"). In light of the foregoing, Ground Six is denied.

### G. Ground Seven

Next, Petitioner contends that "[n]o eyewitnesses exist to any shooting, but Erika Morris gave a deposition in which she thought a motorcycle was the defendant[']s then gave testimony different on the stand." Doc. 1 at 7. Petitioner maintains that Morris was only supposed to give testimony concerning what occurred inside the bar and her testimony  about what occurred outside the bar "falsely placed an added burden of guilt against [Petitioner] to the jury." Id.

According to Petitioner, he raised this claim as ground one of his original Rule 3.850 motion. Id. The record reflects, however, that Petitioner never raised this as a standalone claim; instead, he alleged his counsel was deficient for failing to prevent Morris from testifying and moving to strike her testimony. Resp. Ex. M at 3-4. Notably, Respondents construed this ground as a claim of insufficient evidence concerning Petitioner's conviction for aggravated battery and contend that Petitioner raised it on direct appeal and properly exhausted this claim. Doc. 19 at 43. Nevertheless, in light of the fact that Petitioner is not entitled to relief on this claim, the Court "skips over" the exhaustion issue and

will address the claim on the merits. <u>Santiago-Lugo</u>, 785 F.3d at 475; <u>see also</u> 28 U.S.C. § 2254(b)(2).

Immediately after the shooting on August 31st, Morris left the bar to check on her dog that was in her truck, and while she was outside, she viewed a person on a motorcycle, who she believed was Petitioner, driving away from the scene. Resp. Ex. B at 62-66. While the Court does not have access to Morris's deposition, even assuming she gave contradictory testimony at trial, that would not be a basis for exclusion rather it would be an issue ripe for cross-examination. Moreover, Petitioner cannot demonstrate how Morris's testimony prejudiced his trial. Not only did another individual, Newmans, testify that he also exited the bar and observed the same man, who he thought was Petitioner, on the motorcycle driving away, <u>id.</u> at 82-85, but Petitioner himself confessed to shooting at the bar on August 31st, <u>id.</u> at 143-45, 147-71. Accordingly, even if Morris did not testify at trial, there is no reasonable probability that the outcome of Petitioner's trial would have been different. As such, Ground Seven is denied.

### H. Ground Eight

Petitioner avers that Newmans made his girlfriend call the prosecutor to make a deal before testifying. Doc. 1 at 7. According to Petitioner, Newmans was facing charges and directed his girlfriend to relay a message to the prosecutor that Newmans would not give reliable testimony unless the State

offered him something in return. Id. Petitioner maintains that Newmans' testimony "placed an added, unreliable burden of guilt to the jury." Id.

Petitioner contends that he raised this claim as ground two of his Rule 3.850 motion filed in 2011. Id. Respondents contend that Petitioner failed to properly exhaust this claim. Doc. 19 at 47-48. Petitioner did not address the issue of exhaustion in his Reply. Doc. 32 at 31-33. The record reflects Petitioner did not raise a standalone claim that Newmans improperly made a deal with the State before testifying; instead, Petitioner couched this claim in terms of ineffective assistance of counsel. Resp. Ex. M at 5-7. As such, Petitioner did not properly raise this claim in state court and, therefore, it is unexhausted. Petitioner has failed to allege, let alone demonstrate, cause or prejudice to overcome his failure to exhaust. Likewise, he has not alleged or established a claim of actual innocence.

Nevertheless, even if Petitioner properly exhausted this claim, he would not be entitled to relief. The record reflects that at the time of trial, Newmans was in jail awaiting disposition of a violation of probation. Resp. Ex. B at 85. During cross-examination, Petitioner's counsel elicited testimony from Newmans that he told his girlfriend that he would not show up for a deposition in Petitioner's case unless the State made him a deal. Id. at 89-92. However, at the time Petitioner committed the offenses, Newmans had not yet violated his probation. Id. at 85, 101, 134.  Importantly, Newmans made a statement to

police the night of the incident that was identical to his trial testimony, including his identification of Petitioner as the motorcycle driver. Id. at 85-86, 101, 131-34. Accordingly, Newmans's statement to police prior to violating his probation demonstrates that a possible deal with the State did not induce or change his trial testimony. Moreover, as explained in greater detail above, the State presented substantial evidence of Petitioner's guilt, including his own confession. Therefore, even if Newmans's testimony had been excluded it would not have changed the outcome of the trial. In light of the above analysis, Ground Eight is denied.

### I. Ground Nine

According to Petitioner, the prosecutor "made [objectionable] statements claimed to be made by defendant who by right did not take the stand to offer testimony." Doc. 1 at 8. Petitioner's allegations are not entirely clear as to which statements he believes were found objectionable. Id. It appears as though he is generally arguing that the prosecutor should not have commented on Petitioner's statements made during his interrogation because Petitioner elected not to testify at trial. Id.

Petitioner maintains that he raised this claim as ground sixteen of his 2011 Rule 3.850 motion. However, in that motion he raised this claim in context of ineffective assistance of counsel, which Petitioner has not alleged here. Resp. Ex. M at 31-32. Respondents, though, assert that Petitioner properly exhausted

this claim. Doc. 19 at 51. Based on the claim as alleged in the Petition, the Court does not agree. Nevertheless, because this claim is due to be denied, the Court bypasses the exhaustion issue and addresses the merits of the claim. See Santiago-Lugo, 785 F.3d at 475; 28 U.S.C. § 2254(b)(2).

For purposes of federal habeas review, "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 567 U.S. 37, 45 (2012) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Pursuant to the Fifth Amendment, the prosecution cannot comment on the accused's silence. Griffin v. California, 380 U.S. 609, 615 (1965).

As explained above, Eason Mirandized Petitioner prior to his confession and Petitioner voluntarily waived his right to remain silent during that interview, which was later played at trial. The prosecutor properly commented on Petitioner's statements to detectives because those statements were evidence submitted at trial. See Burchfield v. CSX Transp., Inc., 636 F.3d 1330, 1335 (11th Cir. 2011); United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008). As such, the prosecutor's comments did not infect "the trial with unfairness as to make the resulting conviction a denial of due process." Matthews, 567 U.S. at 45. Accordingly, Petitioner is not entitled to federal habeas relief on this claim and Ground Nine is denied.

### J. Ground Ten

Petitioner maintains that he "was denied the right to a psychological evaluation by two or more mental health experts." Doc. 1 at 8. According to Petitioner, only one mental health specialist interviewed him, but he contends that pursuant to Florida Rule of Criminal Procedure 3.210 two or more specialists should have evaluated him. Id. Petitioner claims more psychological evaluation was required because he was acting peculiar during the interrogation and was previously Baker Acted.[12] Id.

Petitioner avers that he raised this claim as ground thirteen of his Rule 3.850 motion filed in 2011. Doc. 1 at 9. However, Petitioner raised this issue as a claim of ineffective assistance of counsel, not as a standalone claim. Resp. Ex. M at 27. Respondents "restated" Petitioner's claim here as alleging counsel was deficient for failing to have two or more health specialists examine Petitioner and contend that he properly exhausted this claim. Doc. 53-54. Based on the facts as pled in the Petition, Petitioner has not alleged an ineffective assistance of counsel claim. See Johnson, 581 F. App'x at 780. Given the murkiness of the exhaustion issue as to this claim, the Court again bypasses it because relief can

---

[12] The Baker Act, codified under Florida Statute Sections 394.451, et seq., permits the involuntary examination or hospitalization of an individual who is mentally ill, who as a result thereof cannot make decisions for himself, and who is likely to suffer from harm or neglect that cannot be avoided with the assistance of willing family members or other services. § 394.463(1), Fla. Stat.

be denied on the merits. See Santiago-Lugo, 785 F.3d at 475; 28 U.S.C. § 2254(b)(2).

"The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants." Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995). Where a defendant's mental competence is put at issue, a trial court errs in failing to hold a competency hearing. Pate v. Robinson, 383 U.S. 375, 385 (1966). In order to prevail on such a claim, "'a petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial.'" Medina, 59 F.3d at, 1106 (quoting James v. Singletary, 957 F.2d 1562, 1572 n.15 (11th Cir. 1992)). To be competent to proceed to trial, a defendant must have the present ability to "to consult with his lawyer with a reasonable degree of rational understanding" and have "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). A petitioner bears the burden of proving that objective facts known to the trial court unequivocally and clearly create a substantial and legitimate doubt as to his or her competency to proceed. McNair v. Dugger, 866 F.2d 399, 401 (11th Cir. 1989) (quoting Reese v. Wainwright, 600 F.2d 1085, 1091 (5th Cir. 1979)).

Petitioner maintains that the circuit court should have had him evaluated because his behavior during the interrogations with JSO detectives was

"peculiar" and he was previously Baker Acted on September 8, 2007. Doc. 1 at 8. The Court reviewed Petitioner's interrogation, Resp. Exs. B at 136-73, 185-200; C at 205-11, and does not find any peculiar behavior that should have alerted the circuit court to question Petitioner's competency to proceed. Petitioner understood the questions asked, gave cogent responses, and did not otherwise act abnormal. As such, the Court finds this would not have been a basis on which a reasonable judge would have questioned Petitioner's competency to proceed at trial.

Regarding Petitioner's alleged involuntary commitment for a short period of time, the mere fact that he was temporarily committed, without more, is insufficient to establish that Petitioner clearly and legitimately could not proceed to trial. Particularly in light of the fact that nowhere in the transcripts of the trial or sentencing hearings does Petitioner act irrational, have outbursts, show an inability to assist his counsel, or that he did not have a factual understanding of his case or the proceedings. As such, Petitioner has failed to meet his burden that unequivocal and clearly objective facts demonstrate his incompetency to proceed.

Moreover, Petitioner admits a mental health expert evaluated him, Doc. 1 at 8. To the extent Petitioner complain that at least one more expert should have interviewed him, that is not a requirement of federal law, but rather Florida procedural rules. See Fla. R. Crim. P. 3.210. The circuit court's alleged

44

failure to comply with state procedural rules is not a matter reviewable in federal habeas proceedings. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Accordingly, as Petitioner has failed to meet his burden that he was incompetent to proceed, Ground Ten is denied.

## K. Ground Eleven

In Ground Eleven, Petitioner argues that his trial counsel was deficient for failing to depose Eason about improper investigation tactics. Doc. 1 at 9. Petitioner maintains that Eason lied to him during the interview when she said they had a time-stamped surveillance video of the crime scene that showed Petitioner committing the offenses. Id. Additionally, Petitioner alleges that she lied at trial that there was no video of the interrogation. Id. Petitioner also states that Eason put a wire on Tim McNeese in an attempt to obtain a confession from Petitioner. Id.

Petitioner raised a substantially similar claim in his 2011 Rule 3.850 motion. Resp. Ex. M at 25. The circuit court denied this claim, explaining:

> While this Court is aware that there are limitations on the investigative methods and techniques police officers and investigators employ during criminal investigations, this Court finds that Detective Eason did not employ any illegal or coercive interrogation

45

methods in questioning Defendant or obtaining information from Defendant regarding the alleged crimes. Even if this Court were to find counsel's performance was deficient, Defendant fails to demonstrate any prejudice, <u>i.e.</u> that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687. As such, this Court denies ground eleven.

<u>Id.</u> at 95. The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. R; S.

To the extent that the First DCA affirmed the circuit court's denial on the merits,[13] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Absent threats, misrepresentation of the law, or promises of leniency, misrepresentations of facts alone "are not enough to render a suspect's ensuing confession involuntary, nor does it undermine the waiver of the defendant's <u>Miranda</u> rights." <u>United States v. Lall</u>, 607 F.3d 1277, 1285 (11th Cir. 2010). Therefore, even if Eason lied about the facts as Petitioner alleges it would not render his confession involuntary or his conviction unconstitutional. <u>See id.</u> Concerning the wire McNeese reportedly wore, "[a]n individual has no legitimate expectation that the person to whom he is speaking will not relate the

---

[13] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

conversation to the legal authorities, either by repetition or by the recording of the conversation." <u>United States v. Haimowitz</u>, 725 F.2d 1561, 1582 (11th Cir. 1984). As such, Eason's use of a wire on McNeese did not amount to an improper tactic in attempting to get a confession. <u>See id.</u> Accordingly, Petitioner has failed to demonstrate the existence of improper police tactics and, therefore, counsel cannot be deficient for failing to raise this issue. <u>See</u> <u>Freeman</u>, 536 F.3d at 1233. Upon review, the Court finds that the state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established Federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. For the above stated reasons, Ground Eleven is denied.

### L. Ground Twelve

Petitioner contends that the circuit court should have read a jury instruction for aggravated battery without a firearm because he claims the State provided no proof that he had a weapon in light of the fact that JSO never recovered a firearm. Doc. 1 at 9. According to Petitioner, the verdict form should have stated "that if defendant [was] convicted of [aggravated battery] it would be subject to sentencing pursuant to F.S. 775.087(2)(g)(3)." <u>Id.</u> Additionally, Petitioner further contends that the instruction regarding the fact that he did not testify was improper because his comments from the interrogation recording played at trial constituted testimony. <u>Id.</u>

47

Petitioner asserts that he raised this claim in state court as ground eight of his 2011 Rule 3.850 motion. Id. However, in state court, Petitioner couched this claim in terms of ineffective assistance of counsel, not a standalone claim. Resp. Ex. M at 21-22. In their response, Respondents restate this claim as one of ineffective assistance of counsel and aver that Petitioner properly exhausted this claim. The Court again disagrees. Petitioner has shown the ability throughout the Petition to specifically allege claims of ineffective assistance of counsel, but he did not do so here. As such, the Court will not rewrite the Petition. See Johnson, 581 F. App'x at 780. Nevertheless, because this claim is due to be denied, the Court bypasses the exhaustion issue and examines the merits of the claim. See Santiago-Lugo, 785 F.3d at 475; 28 U.S.C. § 2254(b)(2).

The Eleventh Circuit has "held that errors in state jury instructions are federal constitutional issues only where they render the entire trial fundamentally unfair." Erickson v. Sec'y, Dept. of Corr., 243 F. App'x 524, 528 (11th Cir. 2007) (citing Jones v. Dugger, 888 F.2d 1340, 1343 (11th Cir. 1989)); see also Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle, 502 U.S. at 72) ("[u]nlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'").

48

Contrary to Petitioner's assertions otherwise, the State did submit evidence that Petitioner used a weapon. Indeed, Petitioner admitted to owning and firing a .380 caliber handgun at the bar. Forensic analysis of the shell casings and projectiles recovered from the scene showed that the shell casings were from a .380 caliber weapon and all fired from the same gun. In light of Petitioner's own admissions and the forensic evidence, the instruction for aggravated battery with a firearm was appropriate and, therefore, did not violate Petitioner's due process rights.

To the extent Petitioner argues that the verdict form did not allow the jury to make the factual findings necessary to increase his sentence pursuant to section 775.087(2)(a)3, the record refutes this claim. The verdict specifically asked the jury to select from four different interrogatories related to section 775.087(2)(a)3 and the jury ultimately made the factual finding that Petitioner actually possessed and discharged a firearm causing great bodily harm. Resp. Ex. A at 82. Accordingly, the verdict form did not run afoul of <u>Apprendi v. New Jersey</u>[14] or its progeny. Concerning Petitioner's last point that the circuit court should not have instructed the jury regarding Petitioner's decision not to testify, Resp. Ex. A at 74, the record reflects that Petitioner chose not to testify, Resp. Ex. C at 245-47; therefore, this instruction was appropriate because he was not

---

[14] 530 U.S. 466 (2000).

a witness at trial. The playing of Petitioner's recorded interrogation is not the equivalent of trial testimony. The circuit court read a separate and appropriate instruction regarding his out-of-court statements. Resp. Ex. A at 75. Petitioner has failed to establish any errors in the jury instructions, let alone errors that would render his entire trial fundamentally unfair. As such, Petitioner is not entitled to federal habeas relief on this claim and Ground Twelve is denied.

### M. Ground Thirteen

Next, Petitioner avers that his rights under the Confrontation Clause were violated when Eason testified about comments McNeese made to her during her investigation. Doc. 1 at 10. Petitioner claims that McNeese did not testify at trial and he never had an opportunity to dispute the statements McNeese allegedly made to Eason, who Petitioner contends lied about what McNeese told her. Id. Petitioner alleges that he wanted McNeese to give testimony concerning Petitioner's wife replacing Petitioner's medication with oxycodone, which he maintains is newly discovered evidence. Id.

According to Petitioner, he raised this claim as ground six of his 2011 Rule 3.850 motion. Id. The record reflects though that Petitioner raised this as a claim of ineffective assistance of counsel, not a standalone claim concerning his right to confront a witness. Resp. Ex. M at 18-19. Respondents construed this claim as if Petitioner alleged ineffective assistance of counsel and contend that Petitioner properly exhausted this claim. Doc. 19 at 63. However, based on the

50

manner in which Petitioner alleged this claim and in light of the way Petitioner has specifically alleged claims of deficient performance of counsel in other grounds, the Court does not construe this claim as one alleging ineffective assistance of counsel. See Johnson, 581 F. App'x at 780. In any event, as this claim is due to be denied, the Court skips over the exhaustion issue and examines the merits of the claim. See Santiago-Lugo, 785 F.3d at 475; 28 U.S.C. § 2254(b)(2).

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. The Confrontation Clause bars the admission of "testimonial" hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68 (2004). Upon review of Eason's trial testimony, the Court is unaware of any statements that McNeese made to Eason that Eason testified about at trial. Petitioner has failed to allege in the Petition or his Reply which statements in particular he sought to challenge or confront. As such, this claim is due to be denied as conclusory as he has failed to meet his burden.

To the extent Petitioner claims McNeese could have given favorable testimony regarding Petitioner's wife placing oxycodone in Petitioner's prescription bottle, Petitioner has failed to explain the relevance of this

testimony. Notably, in his 2011 Rule 3.850 motion he claimed he met up with McNeese on September 8, 2007, and the two got drunk and Petitioner consumed pills. Resp. Ex. M at 19. While it is unclear if this is the incident regarding oxycodone that Petitioner alleges in the Petition, it would not have had any impact on the events of the shooting or Petitioner's interrogation on September 13, 2007. Moreover, as to McNeese's potential testimony more generally, the record reflects that the circuit court held an evidentiary hearing on Petitioner's claim that his counsel failed to call McNeese. Resp. Ex. N at 234-84. Petitioner's counsel testified that McNeese was not an alibi witness because he saw Petitioner after the shooting. Id. at 254. Moreover, counsel stated that McNeese was hostile towards Petitioner. Id. at 255. Based on this record, Petitioner has failed to demonstrate that McNeese's exclusion as a witness at trial resulted in a constitutional violation. Therefore, Ground Thirteen is denied.

### N. Ground Fourteen

Petitioner maintains that there was an audio and video recording of his September 1, 2007 interview following the shooting, but that Eason testified the video no longer existed. Doc. 1 at 10. According to Petitioner, "[t]his video would show how detectives kicked the interrogation table while defendant was intoxicated trying to get an admission of guilt." Id. Additionally, Petitioner contends that Eason took Petitioner's cellphone, accessed it without his consent, and never returned it. Id.

Petitioner asserts that he raised this claim as ground three of his 2011 Rule 3.850 motion. Docs. 1 at 11; 32 at 40. A review of the record reflects that he asserted this claim in state court as a claim of ineffective assistance of counsel. Resp. Ex. M at 8. Respondents restated Petitioner's argument in their response as an allegation of concerning counsel's deficient performance and aver that Petitioner properly exhausted this claim. Doc. 19 at 65-66. The Court declines to rewrite Petitioner's claim as one alleging ineffective assistance of counsel. See Johnson, 581 F. App'x at 780. However, the Court again bypasses the exhaustion issue because this claim can be denied on the merits. See Santiago-Lugo, 785 F.3d at 475; 28 U.S.C. § 2254(b)(2).

The record reflects that the only interview played at trial was from September 13, 2007, not September 1, 2007. Resp. Ex. B at 136-73. To the extent Petitioner is arguing Eason's actions at the September 1st interview somehow made his subsequent confession during the September 13th interview involuntary, the Court finds there is no merit to this claim. As evidence from the September 1st interview was not used at his trial, Petitioner has failed to demonstrate how access to the video footage of this interview would have changed the outcome of his trial. Petitioner's confession from the September 13th interview was not coerced or obtained in violation of the Constitution. Petitioner has failed to establish how the September 1st interview would have tainted his subsequent confession. Therefore, he is not entitled to federal

habeas relief based on his alleged lack of access to the video of his September 1st interview.

To the extent Petitioner is referencing the September 13th interview, according to Eason, only the audio recording of that interview was available because the hard drive on which the video was to be recorded had no free space. Id. at 178-79. However, during the evidentiary hearing on Petitioner's 2011 Rule 3.850 motion, Petitioner's trial counsel testified that not only did he view the video of the interview with Petitioner prior to trial, he looked at it the night before the evidentiary hearing. Resp. Ex. N at 258-60. Notably, counsel also testified that upon his review of the interview, there was no good faith basis on which to file a motion to suppress, id. at 253-54, testimony the circuit court found more credible than Petitioner's testimony, Resp. Ex. M at 91-92. Assuming this is the interview Petitioner is referencing, the Court finds counsel's testimony refutes Petitioner's claim and he has provided no evidence to rebut counsel's testimony that they viewed the video together and that there was no good faith basis to move to suppress. Accordingly, Ground Fourteen is denied.

**O. Ground Fifteen**

Petitioner argues that he "was entitled to [an] involuntary intoxication defense in reference to the [September] 13th interview." Doc. 1 at 11. According to Petitioner his counsel made a statement during a pretrial appearance that

54

Petitioner's actions were "peculiar," which Petitioner claims supports the notion that his confession should have been suppressed. <u>Id.</u> Respondents contend that Petitioner failed to exhaust this claim in state court. Doc. 19 at 69-72. Petitioner did not address the exhaustion issue in his Reply. Doc. 41 at 40-42. However, in the Petition, he asserts that he raised this issue in his 2011 Rule 3.850 motion. Doc. 1 at 11.

The record reflects that Petitioner did not raise this claim in his 2011 Rule 3.850 motion. Resp. Ex. M at 1-32. Petitioner raised a claim that his counsel was deficient for failing to pursue an involuntary intoxication defense in his 2014 Rule 3.850 motion. Resp. Ex. V at 6. However, that claim is distinct from the standalone claim he raises here and, even if not, the state court denied relief on the claim based on a procedural bar. <u>Id.</u> at 35-40. Based on this record, Petitioner did not exhaust this claim and he has failed to demonstrate cause and prejudice to overcome this failure to exhaust. Likewise, he has not alleged a fundamental miscarriage of justice occurred. Accordingly, this claim is due to be denied as unexhausted. Nevertheless, even if properly exhausted, Petitioner is not entitled to relief. As previously detailed above, the circuit court found credible counsel's testimony at the evidentiary hearing that Petitioner did not appear intoxicated and there was no good faith basis to move to suppress the interview on that ground. Resp. Ex. M at 252-54. Accordingly, for the above stated reasons, Ground Fifteen is denied.

### P. Ground Sixteen

Petitioner contends that he was entitled to a jury instruction on culpable negligence as a lesser offense of count one. Doc. 1 at 11. Respondents contend that Petitioner failed to properly exhaust this claim. Doc. 19 at 72-76. Petitioner did not specifically address exhaustion as to this claim in his Reply, but in the Petition he contends that he raised the claim in his 2014 Rule 3.850 motion. Doc. 1 at 11. The record does not reflect that he raised this claim in that motion and, Resp. Ex. V, even if he did, the circuit court found the 2014 Rule 3.850 motion was untimely and successive. Id. at 35-40. As the circuit court denied relief on procedural grounds, Petitioner did not properly present this claim in state court. See Martinez, 566 U.S. at 9-10. Petitioner has not demonstrated cause or prejudice to excuse this procedural default nor has he alleged the existence of a miscarriage of justice or his actual innocence. Thus, this claim is due to be denied as unexhausted.

Nonetheless, even if properly exhausted, this claim is meritless because the jury found Petitioner guilty of the greater offense of aggravated battery. Therefore, any claim of prejudice is speculative and relies solely on the basis of the hypothetical possibility of a jury pardon, which is insufficient to warrant federal habeas relief either as a standalone claim, see Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citing United States v. Lane, 474 U.S. 438, 449 (1986)) (finding that federal habeas petitioner "are not entitled to habeas relief based

on trial error unless they can establish that it resulted in 'actual prejudice.'");

Calderon v. Coleman, 525 U.S. 141, 146 (1998) (noting that "mere speculation that the defendant was prejudiced by trial error" is insufficient to warrant federal habeas relief; instead, "the court must find that the defendant was actually prejudiced by the error."); or a claim of ineffective assistance of counsel, see Strickland, 466 U.S. at 694-95; Sanders, 946 So. 2d at 959-60. For the above reasons, Ground Sixteen is denied.

## Q. Ground Seventeen

Petitioner avers that his counsel was deficient for failing to present mitigating evidence at his sentencing hearing and request a downward departure sentence. Docs. 1 at 12; 1-2 at 10. According to Petitioner, counsel should have argued the following mitigating factors at sentencing:  (1) the need for restitution outweighed the need for an extended prison sentence; (2) he committed the offense in an unsophisticated manner; (3) he showed remorse; (4) the victim had no lasting injury; (5) he did not intend to shoot the victim, and (6) he did not have a criminal past. Docs. 1 at 12; 1-2 at 10.

Both Petitioner and Respondent assert that Petitioner properly exhausted this claim. However, the record does not support this assertion. Respondents maintain that Petitioner raised this claim in his 2011 Rule 3.850 motion, Doc. 19 at 76-77, but he did not, Resp. Ex. M at 1-76. Petitioner maintains that he raised this claim in his second Rule 3.850 motion. Docs. 1 at

12; 32 at 44. Upon review of that motion though, Petitioner did not assert this claim in any fashion. Resp. Ex. V at 1-34. Based on this record, the Court finds that Petitioner did not properly exhaust this claim. Regardless, the Court need not address the exhaustion issue because this claim lacks merit. See Santiago-Lugo, 785 F.3d at 475; 28 U.S.C. § 2254(b)(2).

Regarding the twenty-five-year sentence imposed on count one, Petitioner received the lowest sentence permissible under Florida law given the fact that he discharged a firearm causing great bodily harm. See § 775.087(2)(a)3, Fla. Stat. (2007) ("[T]he convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison.") (emphasis added). As to the remaining counts, at the sentencing hearing counsel presented Petitioner's testimony, during which he testified about:  (1) being remorseful; (2) being a boy scout; (3) his respect for life; (4) how extended incarceration would be a detriment to the growth of his children; (5) his work helping the National Guard during a blizzard; and (6) his charitable work. Resp. Ex. A at 116-19. The State also presented the testimony of Petitioner's wife, who testified she was terrified of him, feared for her life if he was let out of jail too soon, and that their children were scared of him as well. Id. at 121-24. Likewise, the prosecutor represented that Collier testified he believed Petitioner should receive "strict punishment." Id. at 126. In sentencing Petitioner, the circuit court stated that "drive-by

shootings in our community are the worse problem we have" and that Petitioner should be fortunate he did not actually kill Collier. <u>Id.</u> at 127. The circuit then imposed the statutory maximum sentences on counts two and three.

Based on this record, the Court finds Petitioner cannot establish prejudice. Petitioner testified he was remorseful at sentencing. The circuit court listened to the evidence at trial and heard the testimony that Petitioner did not intend to shoot Collier, understood the manner in which Petitioner committed the crimes, and was aware of the injuries the victim suffered. Although restitution was over $4,000, Collier was insistent that the Court impose "strict punishment." Accordingly, in light of the mitigating evidence presented at sentencing and the evidence submitted at trial, the Court finds there is no reasonable probability Petitioner would have received a lesser sentence had counsel argued these points. Therefore, Ground Seventeen is denied.

### R. Ground Eighteen

Petitioner avers that he needed to testify at trial to refute statements he made during his interview with detectives and the prosecutor's paraphrasing of those statements. Doc. 1 at 12. According to Petitioner, his trial counsel "never stated that defendant could give testimony 'after' the interview and [the] prosecutor made statements during trial." <u>Id.</u> Although not a model of clarity, it appears Petitioner would have testified that he did not admit to the shooting in his interrogation. <u>Id.</u>

Respondents contend that Petitioner failed to exhaust this claim, Doc. 19 at 79-83, and Petitioner admits the same in his Petition, Doc. 1 at 13. Petitioner has not alleged any cause or prejudice to excuse his failure to exhaust or that a miscarriage of justice will occur. Therefore, this claim is due to be denied as unexhausted. However, even if properly exhaust, this claim is meritless because the record refutes his contention that he did not have the opportunity to take the stand after trial began. In fact, following the closing of the State's case, the circuit court advised Petitioner of his right to testify and held a colloquy with him on the subject, after which Petitioner voluntarily chose not to take the stand. Resp. Ex. C at 245-47. Petitioner heard all of the State's evidence against him, including his interrogation statements, and was properly advised of his right to testify, but voluntarily waived that right. Even if counsel failed to properly inform him, the circuit court cured any prejudice when it properly advised and gave Petitioner the opportunity to testify . Accordingly, the record clearly refutes his claim and Ground Eighteen is denied.

**S. Ground Nineteen**

Petitioner asserts that on September 13, 2007, Eason prepared an incident report following their interview that stated Eason arrested Petitioner on an aggravated stalking charge. Doc. 1 at 13. According to Petitioner, the "coerced" September 13th interview "was for [aggravated] stalking not about any shooting incedent [sic]." Id. It appears Petitioner is arguing that because

Eason only arrested him for aggravated stalking following the interviews, his statements cannot be used in the prosecution of other charges.

Respondents aver that Petitioner did not exhaust this claim. Doc. 19 at 83-86. Petitioner did not address exhaustion as to this issue, but in the Petition he alleges he raised this claim as ground five of his 2011 Rule 3.850 motion. Doc. 1 at 13. The record reflects that Petitioner alleged in state court that his counsel was deficient for failing to move to suppress the September 13th interview. Resp. Ex. M at 10-17. Here, however, Petitioner is not arguing his counsel is deficient; therefore, he did not properly present this claim to the state court. Petitioner has not alleged cause and prejudice or the occurrence of a manifest injustice; therefore, this claim is due to be denied as unexhausted. Moreover, Petitioner has not cited to and this Court is aware of no Supreme Court authority holding police interrogations are limited to single subject matters. As such, Petitioner has not raised a federal claim that this Court can review. In light of the above, Ground Nineteen is denied.

**T. Ground Twenty**

Lastly, Petitioner contends that three interviews and the arrests and release on bonds associated with each interview wore him down "to where he would say anything to be left alone." Doc. 1 at 13. Respondents aver that this claim is unexhausted. Doc. 19 at 86-89. Petitioner did not address exhaustion as to this claim. The record shows that Petitioner never raised a standalone

claim that his confessions were unconstitutional because detectives wore him down by giving three interviews over a thirteen-day period. As Petitioner has neither alleged cause and prejudice or a miscarriage of justice to excuse this default, Ground Twenty is due to be denied as unexhausted.

Even if properly exhausted, Petitioner is not entitled to relief. The Court finds that three interviews over a thirteen-day period is not excessive, particularly in light of the fact that the Court has already found that Petitioner's allegations of coercion are unfounded. Multiple days passed between all three interviews and Petitioner has not alleged that the actual interviews themselves took place over an excessive period of time. The one interview the State used at trial reflects that Petitioner acknowledged and waived his right to a counsel and to be silent before confessing to the crimes. Resp. Ex. B at 136-73. Moreover, the detectives afforded him a break during that interview, Resp. Ex. C at 183-87, and, as explained in greater detail above, did not coerce Petitioner to confess. Petitioner has failed to demonstrate that a constitutional violation occurred here that actually prejudiced him at trial. See Calderon, 525 U.S. at 146. As such, Ground Twenty is denied.

Accordingly, it is **ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[15]

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of September, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-8

C:      William Browning, #J36868
Jennifer J. Moore, Esq.

---

[15] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.